CLERK'S OFFICE U.S. DIST COURT
AT ROANOKE, VA
FILED

DEC 14 2007

JOHN F. CORCORAN, CLERK
BY: _____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

WILLIAM CLYDE KARAMPOUR,　　　　)
　　　　　Petitioner,　　　　　　　　　)　　　Civil Action No. 7:07CV00308
　　　　　　　　　　　　　　　　　　)
v.　　　　　　　　　　　　　　　　　)　　　**MEMORANDUM OPINION**
　　　　　　　　　　　　　　　　　　)
BRYAN WATSON,　　　　　　　　　　)　　　By: Hon. Glen E. Conrad
　　　　　Respondents.　　　　　　　　)　　　United States District Judge

William Clyde Karampour, a Virginia inmate proceeding pro se, filed this action as a

petition for writ of habeas corpus, pursuant to 28 U.S.C. § 2254. Karampour challenges the

validity of a probation revocation order entered by the Circuit Court for the County of Franklin

on December 9, 2005. The petition is presently before the court on the respondent's motion to

dismiss. For the reasons set forth below, the court will grant the respondent's motion.

## BACKGROUND

On September 13, 2000, Karampour entered pleas of guilty to four counts of grand

larceny, two counts of breaking and entering, two counts of trespassing, unauthorized use of a

motor vehicle, and petit larceny. On January 5, 2001, the Circuit Court sentenced him to a total

term of imprisonment of twenty-six years, with all but six months suspended. Karampour was

ordered to be on good behavior for fifteen years, he was ordered to complete detention center and

diversion center programs, and he was placed on supervised probation for three years to

commence upon his release from confinement.

On December 3, 2001, the Circuit Court conducted a revocation hearing, at which it

found that Karampour had violated the terms of his probation by failing to complete the diversion

center program. Consequently, the Court revoked the previously suspended sentences, re-

suspended them, ordered Karampour to be on good behavior, and ordered that the three-year period of supervised probation commence on December 3, 2001.[1]

Karampour was released from the local jail on December 3, 2001. On July 18, 2002, while on supervised probation, Karampour was convicted of breaking and entering. The Circuit Court conducted a revocation hearing on October 21, 2002, at which it again revoked petitioner's previously suspended sentences, imposed a three-year term of imprisonment, and re-suspended the remainder of the sentences, totaling twenty-two years and six months. The Circuit Court ordered Karampour to be on good behavior, and ordered that his three-year term of supervised probation recommence upon his release from confinement.

On April 23, 2005, while serving the three-year sentence, Karampour escaped from the local jail, stole a vehicle, and committed five petit larcenies. Petitioner pled guilty to these offenses on September 16, 2005.

On December 6, 2005, the Circuit Court conducted a third revocation hearing for the 2001 convictions. Finding that Karampour failed to be on good behavior by escaping from jail and committing new offenses, the Circuit Court revoked the previously suspended sentences, imposed a three-year term of imprisonment, and re-suspended the remainder of the sentences, totaling nineteen years and six months. The Circuit Court entered the probation revocation order on December 9, 2005.

Karampour appealed the revocation order to the Court of Appeals of Virginia. On appeal, Karampour argued that the Circuit Court lacked jurisdiction to revoke his probation because he

---

[1] Karampour was given credit for the six months that he had served.

was in jail, rather than probation, when he committed the acts that served as the basis for the revocation. By order entered August 7, 2006, Karampour's petition for appeal was denied.

Karampour did not file a direct appeal to the Supreme Court of Virginia. Instead, he filed a petition for writ of habeas corpus on December 4, 2006. The petition was dismissed by the Supreme Court of Virginia on March 5, 2007.

Karampour filed the instant petition on June 18, 2007. The petition includes the following claims:

1.   The Commonwealth's Attorney had a conflict of interest;

2.   The Circuit Court wrongly revoked Karampour's suspended sentences, in light of the fact that he was in jail, rather than probation, when he committed the acts that served as the basis for the revocation; and

3.   Karampour's attorney did not effectively represent him at the December 6, 2005 revocation hearing, as reflected by the attorney's failure to adequately discuss the case with Karampour prior to the hearing and the attorney's failure to meet with Karampour prior to sentencing.

On August 29, 2007, the respondent moved to dismiss the petition. The following day, the court issued a <u>Roseboro</u>[2] notice advising Karampour that he had twenty days in which to file a response to the respondent's motion. As of today, Karampour has not filed a response. Since the twenty-day period has now expired, the petition is ripe for review.

<u>**STANDARD OF REVIEW**</u>

Pursuant to 28 U.S.C. § 2254(b), a petitioner challenging a state court conviction must first exhaust remedies available in the courts of the state in which he was convicted before

---

[2] <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975).

seeking federal habeas review.[3]  See Preiser v. Rodriguez, 411 U.S. 475 (1973).  When a claim

has been adjudicated on the merits by a state court, this court may grant habeas relief only if the

state court's adjudication of the claims "was contrary to, or involved an unreasonable application

of, clearly established [f]ederal law," or "was based on an unreasonable determination of the

facts."  28 U.S.C. § 2254(d).  The Supreme Court of the United States has explained that this

statute "plainly sought to ensure a level of 'deference to the determinations of state courts,'

provided those determinations did not conflict with federal law or apply federal law in an

unreasonable way."  Williams v. Taylor, 529 U.S. 362, 386 (2000) (internal citations omitted).

Consequently, "state-court judgments must be upheld unless, after the closest examination of the

state-court judgment, a federal court is firmly convinced that a federal constitutional right has

been violated."  Id. at 389.

## DISCUSSION

A.    Claims 1 and 2 are procedurally defaulted.

In claim 1, Karampour appears to allege that the Commonwealth's Attorney had a

conflict of interest and should have recused himself from representing the Commonwealth at the

December 6, 2005 revocation hearing.  Although Karampour raised this issue at the beginning of

---

[3] The exhaustion requirement is satisfied by seeking review of the claims in the highest state court
with jurisdiction to consider the claims.  In Virginia, a non-death row inmate can exhaust his state remedies in
one of three ways, depending on the nature of the claims he is raising.  First, he can file a direct appeal to the
Court of Appeals of Virginia, with a subsequent appeal to the Supreme Court of Virginia if the Court of
Appeals rules against him.  Second, he can attack his conviction collaterally by filing a state habeas petition
with the Circuit Court where he was convicted, with an appeal of an adverse decision to the Supreme Court of
Virginia.  See Va. Code § 8.01-654.  Finally, he can exhaust his remedies by filing a state habeas petition
directly with the Supreme Court of Virginia.  Id.  Whichever route the inmate chooses to follow, it is clear that
he must ultimately present his claims to the Supreme Court of Virginia and receive a ruling from that court
before a federal district court can consider them.  See O'Sullivan v. Boerckel, 526 U.S. 828, 845 (1999).

4

the revocation hearing, he did not pursue the issue as part of his direct appeal to the Court of Appeals of Virginia.

"Under Virginia law, failure to raise a claim on direct appeal from a criminal conviction ordinarily bars consideration of that claim in any subsequent state proceeding." Smith v. Murray, 477 U.S. 527, 533 (1986) (citing Coppola v. Warden of Virginia State Penitentiary, 282 S.E.2d 10 (1981); Slayton v. Parrigan, 205 S.E.2d 680 (1974)). In Slayton v. Parrigan, the Supreme Court of Virginia held that "[t]he trial and appellate procedures in Virginia are adequate in meeting procedural requirements to adjudicate State and Federal constitutional rights," and that "[a] prisoner is not entitled to use habeas corpus to circumvent the trial and appellate processes for an inquiry into an alleged non-jurisdictional defect of a judgment of conviction." Slayton, 205 S.E.2d at 682. The United States Court of Appeals for the Fourth Circuit has repeatedly held that the rule set forth in Slayton constitutes an adequate and independent state ground for the denial of habeas relief. See Fitzgerald v. Greene, 150 F.3d 357, 366 (4th Cir. 1998); Fisher v. Angelone, 163 F.3d 835, 853 (4th Cir. 1998); Wright v. Angelone, 151 F.3d 151, 159-60 (4th Cir. 1998). The Fourth Circuit has also held that when state law would clearly bar state habeas review, federal habeas review is also precluded. Bassette v. Thompson, 915 F.2d 932, 937 (4th Cir. 1990). Accordingly, because Karampour could have raised claim 1 in his direct appeal from the revocation order, but he failed to raise it, the claim is procedurally defaulted. This court may not review procedurally defaulted claims absent a showing of cause and prejudice or actual innocence. See Wright v. Angelone, 151 F.3d at 160. Because Karampour does not attempt to establish cause and prejudice or actual innocence to excuse the procedural default, claim 1 must be dismissed.

5

In claim 2, Karampour alleges that the Circuit Court wrongly revoked his suspended sentences, in light of the fact that he was in jail, rather than probation, when he committed the acts that served as the basis for the revocation. Although Karampour raised this claim in his direct appeal to the Court of Appeals of Virginia, he did not appeal the adverse ruling of the Court of Appeals to the Supreme Court of Virginia. Consequently, the court agrees with the respondent that this claim is also procedurally defaulted. See Slayton, 205 S.E.2d at 682 ("A petition for a writ of habeas corpus may not be employed as a substitute for appeal. . . ."); see also Whitley v. Bair, 802 F.2d 1487, 1502 (4th Cir. 1986) (holding that "Whitley's failure to appeal from the circuit court's ruling on procedural default . . . constitute[d] a procedural default sufficient to preclude federal court review of the merits of those claims on which the circuit court declared Whitley to have defaulted."). Because Karampour has not established cause and prejudice or actual innocence to excuse the procedural default, claim 2 must be dismissed.

B.     Claim 3 is without merit.

In claim 3, Karampour alleges that his attorney provided ineffective assistance at the December 6, 2005 revocation hearing. The Supreme Court of Virginia addressed the merits of this claim as part of the state habeas proceedings. The Court ultimately concluded that the claim was without merit, citing Gagnon v. Scarpelli, 411 U.S. 778 (1973). Because the Supreme Court of Virginia adjudicated this claim on the merits, Karampour must establish that the Court's ruling resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or that it was based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d). Having reviewed Karampour's petition, the court concludes that he has failed to make either showing.

6

A claim for ineffective assistance of counsel is tenable only when there is an underlying Sixth Amendment right to counsel. See Wainwright v. Torna, 455 U.S. 586, 587-588 (1982). In Gagnon v. Scarpelli, the Supreme Court of the United States held that the Constitution provides no general Sixth Amendment right to counsel in parole or probation revocation proceedings. Gagnon, 411 U.S. at 783-790. Instead, the Supreme Court adopted a case-by-case approach for determining whether counsel is constitutionally required, and stated that counsel should generally be afforded in two instances: where the alleged probation violations are contested; and where the violations are not contested, but the probationer claims that "there are substantial reasons which justified or mitigated the violation and make revocation inappropriate, and that the reasons are complex or otherwise difficult to develop or present." Id. at 790.

With these principles in mind, and having reviewed the transcript of the revocation hearing, the court concludes that Karampour did not have a constitutional right to counsel at the revocation hearing. At the beginning of the hearing, the Circuit Court made clear that the revocation proceeding arose from Karampour's "escape from custody, grand larceny of an auto, and five counts of petty [sic] larceny." (Hearing Tr. at 6). Karampour's probation officer then testified regarding Karampour's criminal history, including his escape from the Franklin County Jail on April 23, 2005, and the seven offenses for which he was subsequently convicted on September 16, 2005. (Hearing Tr. at 8-9). During the hearing, Karampour did not contest the validity of the September 16, 2005 convictions, or argue that they did not give rise to a violation of his conditions of probation. Instead, Karampour's attorney elicited testimony from the probation officer that Karampour was only nineteen at the time of the "original criminal convictions" and that Karampour had been "treated for ADHD all throughout his childhood and his adolescence." (Hearing Tr. at 9-10). Karampour then testified that he had a history of not

7

being able to handle his impulses or control himself, and that he was married with children. (Hearing Tr. at 13, 15). Following Karampour's testimony, defense counsel presented a closing argument in which he noted that Karampour's mother and sister had passed away, and that there had been "just a whole slew of tragedies, some of which he has been able to deal with, others . . . he has not responded to well at all." (Hearing Tr. at 16). During allocution, Karampour stated only that he was "sorry for what [he did]." (Hearing Tr. at 19).

Given this review of the relevant portions of the revocation hearing transcript, the court concludes that Karampour did not contest "the alleged violation of the conditions," and that there was nothing "complex or otherwise difficult to develop and present" in an attempt to justify or mitigate the probation violation. Gagnon, 411 U.S. at 790. Accordingly, the Supreme Court of Virginia's decision that counsel was not constitutionally required is entitled to deference under 28 U.S.C. § 2254(d), and claim 3 must be dismissed.[4]

## CONCLUSION

For the reasons stated, the court will grant the respondent's motion to dismiss. The Clerk is directed to send certified copies of this memorandum opinion and the accompanying order to the petitioner and all counsel of record.

ENTER: This _14th_ day of December, 2007.

_Jack Conrad_
_____
United States District Judge

---

[4] The court notes that even if Karampour had a constitutional right to counsel at the revocation hearing, his ineffective assistance claim would nonetheless be subject to dismissal under Strickland v. Washington, 466 U.S. 668 (1984), since he has failed to allege facts sufficient to establish that his counsel's performance fell "below an objective standard of reasonableness," and that "the deficient performance prejudiced the defense." Strickland, 466 U.S. at 687-688.

8